Leovardo Salceda J-90933
CVSP D9-237 Low
P.O. Box 2349
Blythe, Ca. 92226

In Pro se

ORIGINAL





# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

LEOVARDO SALCEDA,
    Petitioner

    v.

JOHN F. SALAZAR,
    Warden, Respondent

    And

JERRY BROWN,
    Attorney General of California,
    Additional Respondent

'08 CV 1037 IEG PCL

Civil No.:_____

**APPLICATION FOR EQUITABLE
AND STATUTORY TOLLING 28
U.S.C. 2244 TO HEAR MERITS OF
PETITION FOR WRIT OF HABEAS
CORPUS 28 U.S.C. 2254 BY A
PERSON IN STATE CUSTODY**



**TABLE OF CONTENTS**

A. INTRODUCTION . . . . . . . . . . . . . . . . . . . 1

B. FACTS AND PROCEDURE HISTORY OF INTSTANT CASE SCD112436 . . . . _ 3

    1. Prosecution Evidence

    2. Defense Evidenc

    3. First Direct Appeal, Re-Sentence, Second Direct Appeal

C. APPLICATION FOR EQUITABLE AND STATUTORY TOLLING 28 U.S.C. 2241,
TO HEAR MERITS OF PETITION FOR WRIT OF HABEAS CORPUS
28 U.S.C. 2254 . . . . . . . . . . . . . . . . . . 6

    1. Introduction

D. NINE (9) FACT-SPECIFIC EXTERNAL FORCES, RATHER THAN PEITIONER'S
LACK OF DILIGENCE, ACCOUNT FOR EQUITABLE AND STATUTORY TOLLING . 7

    1. Petitioner was Deprived of Legal Files

    2. Prison Vocation Trades and Job Assignments Conflicted with Law Library Use

    3. Lancaster Prison Maximum Security Continous Lockdowns

    4. Gathering Records of Instant Case, and of Prior Conviction Cases

    5. Motion for Discovery, and Motions for Settled Statement to Reconstruct
        Missing Records

    5.1 First Piece of Exculpatory Evidence

    5.2 First Round of State Habeas Corpus Petititons

    5.3 Second Piece of Exculpatory Evidence

    5.4 Third Piece of Exculpatory Evidence

    5.5 Forth Piece of Exculpatory Evidence, Jesus H. Lopez Declcares He
        Is The Actual Robber

    5.6 Second Round of State Habeas Petitions To Correct Deficiencies Under
        *Robbins* 18 Cal.4th 770, and *Swain* 34 Cal.2d 300

    6. Petitioner's Chronic Crohn's Disease

    7. Inadequate Prison Law Library

    8. Cause and Prejudice *Coleman v Thompson* 501 US 722

    9. Fundamental Miscarriage of Justice

    10. Pending Petition For Review, S162914

E. POINTS AND AUTHORITIES, STANDARD OF REVIE . . . . . . . 35

CONCLUSION, PRAYER FOR RELIEF, VERIFICATION . . . . . . 38

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

LEOVARDO SALCEDA,
    Petitioner

     v.

JOHN F. SALAZAR,
    Warden, Respondent

    And

JERRY BROWN,
    Attorney General of California,
    Additional Respondent

Civil No._____

**APPLICATION FOR EQUITABLE AND STATUTORY TOLLING 28 U.S.C. 2244 TO HEAR MERITS OF PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. 2254 BY A PERSON IN STATE CUSTODY**

## A. INTRODUCTION

A jury convicted Leovardo Salceda (petitioner) of one count of kidnapping Pen. C. 207(a). Three prior strikes were found true and petitioner was sentenced to 35 years to life under the Three Strikes Law. On appeal, the conviction was affirmed, but sentence vacated. On remand, the trial court struck two strikes, left one strike active, and re-sentenced petitioner to 8 year upper term for kidnap, doubled to 16 years, and added two consecutive 5 year serious felony priors for a total term of 26 years 80% determinate sentence, which he currently serves.

Petitioner herein applies for equitable and statutory tolling. Before petitioner may present his four claims, first he must be granted equitable and statutory tolling for this Federal District Court to hear the claims on the merits. In the Federal Petition for Writ of Habeas Corpus, petitioner seeks to overturn his state conviction and sentence on grounds of:

1. Ineffective Assistance of Counsel;

2. Actual Innocence of prior robberies;

3. Denial of fair trial; and

4. Sentence is illegal and unconstitutional

1

On 9-27-08, the California Supreme Court denied the four claims mentioned above on the MERITS, without citation to procedural default. See Denial Order, S150480, 9-27-07 **Exh**. A16.

Petitioner's pleadings in pro se are held to less stringent standards than formal pleadings drafted by attorney's. *Heines v Kener* 404 US 519, 520. Petitioner presents the habeas corpus petition and application for equitable and statutory tolling in type-written form because the petition and equitable claims are lengthy and complex which does not fit on the Court's standard 2254 habeas form. All information required for this Court's review is included. If petitioner missed something and this Court requires it, petitioner promptly will supplement the information required. The habeas and equitable claims are stapled separately because they are bulky, but refer to the same exhibit's and petitioner's declaration. *California Rules of Court; U.S. District Court - Southern District; Rule HC.2b. (2008)* (Federal)

Petitioner refers to the Reporter's and Clerk's Transcript of the instant case unless otherwise noted. Should this Federal District Court require further documentation (apart from exhibits submitted herein) to verify petitioner's claims, petitioner will promptly will mail them to this Court via US Mail. The certified documents in petitioner's prison locker are:

(1) Complete set of RT and CT of instant case SCD112436; (2) Court file of instant case; (3) Defense counsel client file of instant case; (4) District attorney letters concerning discovery of instant case; (5) Court file and clerk's minutes of prior robbery case CR105783; (6) Defense counsel client file of prior robbery case; (7) District Attorney letters concerning discovery and *disclosing exculpatory evidence* of prior robbery case; (8) RT of prior assault W/D/W case CR140382; (9) Court file of prior assault W/D/W case; and (10) Defense counsel client file of prior assault W/D/W case.

Petitioner was prosecuted at the San Diego Superior Court, 220 W. Broadway, San Diego, CA 92101, (619) 531-4420, in the instant case SCD112436 and both prior conviction cases CR105783 and CR140382.

B.  FACTS AND PROCEDURE HISTORY OF INSTANT CASE SCD112436

An Information was filed on 5-17-95, charging petitioner with Count 1 kidnapping to commit robbery Pen. C. 209(a); Count 2 kidnapping Pen. C. 207(a); Count 3 attempted carjacking Pen. C. 664, 215(a); and Count 4 assault W/D/W Pen. C. 245(a)(1). It was also alleged petitioner suffered two prior felonies under Pen. C. 667(a)(1), and suffered three prior felonies under the Three Strikes Law Pen. C. 667(b)-(i), 1170.12. Petitioner faced three strikes case. CT 1-3.

On the day of jury trial, 9-25-95, Counts 1 and 3 of the Information were dismissed. Counts 2 and 4 were renumbered Counts 1 and 2 for trial purposes. (Petitioner was held to answer kidnapping and assault W/D/W). RT 27-28; CT 213.

### 1. *Prosecution Evidence*.

Petitioner's jury trial lasted three days. On 9-25-95, jury trial began. Russell Champion testified he was driving home and stopped to allow petitioner to walk across the street. As petitioner reached the curb, he turned and jumped into Champion's car through the open passenger window. Although not armed, petitioner flexed his fist in Champion's face and demanded Champion drive forward. Champion drove four long blocks. Halfway into the ride, Champion slowed down to make a left turn on the street he lived on. As Champion slowed to turn, petitioner told him to go straight, but Champion instead turned. Petitioner did not seem upset. As Champion drove, there were two bystanders 100 yards apart. The 1st bystander was changing his shirt next to a parked pickup truck on petitioner's side. Petitioner told Champion to stop next to the 1st bystander. Petitioner tried to talk with the man, but the bystander frowned and did not respond to petitioner. Champion continued driving slowly. As Champion neared his home, petitioner told Champion to stop next to the 2nd bystander who was raking his yard, but Champion said no and petitioner punched him two times. Champion was near his home and zoomed into his driveway and stopped and Petitioner exited the car

3

and went on foot back to the 2nd bystander and asked for a ride home. Champion called 911 at 5:05 p.m. and within five (5) minutes the police arrived and arrested petitioner standing in front of the 2nd bystander's home. In total Champion drove four long blocks (1.2 miles) and petitioner was in Champion's car five minutes. Champion testified petitioner did not appear intoxicated nor acting unusual. RT 59-100.

### 2. *Defense Evidence*

Petitioner testified he began drinking beer at his home at 10:00 a.m. He then went to his mother's home and continued drinking. At 1:30 p.m. Petitioner left his mother's home staggering drunk. At 2 p.m., petitioner entered a bar and continued drinking and blacked out in the bar.

Carmen Lopez, petitioner's mother, testified petitioner was at her home from 11 a.m. to 1:30 p.m., drinking beer. At 1:30 p.m., petitioner left her home and he was staggering because he was drunk.

Gabriela Murgo, barmaid, and Jesse Guerrero, bouncer, testified petitioner entered the bar about 2 p.m. and Murgo served petitioner beer for 3 hours. At 5 p.m., Murgo and Guerrero saw petitioner was too intoxicated, swaying and bothering people in the bar, so they decided to stop serving him beer. At that same time (5 p.m.) Guerrero kicked petitioner out of the bar. Within five (5) minutes of leaving the bar, Petitioner was in Champion's car. RT 236-353.

### *Conviction and Sentence.*

After all the testimony had been give in the jury trial, defense counsel motioned to bifurcate the prior convictions. Trial on the priors convictions was bifurcated. RT 386-387; CT 213.

On 10-3-95, the jury found petitioner ***guilty*** of Count 1 kidnapping Pen. C. 207(a), and ***guilty*** of exhibiting a deadly weapon Pen. C. 417(a), as a lesser related offense of an assault W/D/W charged in Count 2. RT 460-465; CT 120-123, 225.

The following day, on 10-4-95, a bifurcated trial on the priors was held.  The trial court found true the two prior robberies (2 strikes); and one prior assault W/D/W (1 strike). RT 466-476; CT 226-227. **Exh**. B11.

On 12-29-95, petitioner was sentenced to 35 years to life under the Three Strikes Law as follows:   25 years to life for kidnapping with prior convictions.   Pen. C. 207(a); 667(e)(2), 1170.12(c)(2), plus 10 years for two prior serious felony convictions Pen. C. 667(a)(1).  RT 672-675; CT 205, 213.

### 3. *First Direct Appeal, Re-Sentence, Second Direct Appeal*

Petitioner appealed the conviction and sentence and claimed 1) instructional error, 2) illegal sentence, and 3) trial court should have exercised its power to strike prior "strikes" under 3 strikes law. On 10/25/96, the Court of Appeal filed an unpublished opinion and affirmed the kidnap conviction, but *vacated* the 35 years to life sentence and remanded petitioner's case to allow the trial court to exercise its power to strike priors in the interest of justice under the authority of *People v Superior Court (Romero)* 13 Cal.4th 497.

On 6/12/97, at re-sentence the trial court struck 2 strikes and left 1 strike active:  It then selected the 8-year upper term for kidnap, doubled to 16 years because of an active strike, and added two consecutive 5-year serious priors for a total determinate sentence of 26 years 80 %.  RT 17-21, 6-12-97.

Petitioner appealed the sentence and claimed 1) mitigation outweighed aggravation sentencing factors and therefore the trial court erred in selecting the 8 year upper term, and 2) Petitioner should get 531 days credit toward his 26 year sentence.  On 3/25/98, the Court of Appeal filed an unpublished opinion and affirmed the sentence, and awarded petitioner 531 days credit towards his 26 year sentence. See 1st Appeal Opinion D025258, 10-25-96.  **Exh**. A.  See 2nd Appeal Opinion D029086, 3-25-98. **Exh**. A1

C.  APPLICATION FOR EQUITABLE AND STATUTORY TOLLING 28 U.S.C. 2244, TO HEAR

METITS OF PETITION FOR WRIT OF HABEAS CORPUS 28 U.S.C. 2254

1.  *Introduction*

The four claims presented in the instant habeas petition have been presented in the California Supreme

Court, and **denied on the merits**. S150480, 9-25-07, **Exh.** A16 .  The claims are 1) Ineffective

Assistance of Counsel; 2) Actual Innocence ; 3) Denial of fair trial; and Sentence is

illegal and unconstitutional.

Petitioner had 1-year from the date of judgment became final, conclusion of direct appeal or

expiration of time for seeking review to file his federal habeas petition.  However, the AEDPA also

provides Petitioner is entitled to tolling for a "properly filed" pending application for state post-

conviction or other collateral review with respect to the pertinent judgment or claim.  *28 USC. 2241*

*(d)(1)(2); Carney v. Saffold* 536 US 214 at 218.

Petitioner claims equitable and statutory tolling of the filing deadline for federal habeas review

is available because nine (9) extraordinary circumstances beyond Petitioner's control, made it

impossible to file a petition on time under AEDPA.  External forces, rather than Petitioner's lack of

diligence, account for failure to file timely claims and therefore equitable tolling is appropriate.  There

is a casual relationship between "highly fact dependent" tolling claims and lateness of filing that entitle

granting equitable and statutory tolling.  *Spitsyn v. Moore*, 345 F.3d 796 at 801-802.

In addition, Petitioner sets out to demonstrate cause for procedural default and prejudice as a

result.  *Colman v. Thompson* 501 US 722 at 752-753.  Trial counsel in the instant case was ineffective

for failure to investigate in the pretrial, trial, trial on priors, and sentence phases.  Had he used his

available resources, he would have unearthed existing evidence that would have led to further discovery

of Boykin-Tahl error on face of prior robbery case, and objected to the prosecutor's misconduct of

falsely claiming that petitioner signed a change of plea form.  When in fact , no such plea form exists.

ET

Moreover, counsel failed to investigate and unearth existing exculpatory evidence in the client file and prosecutor files to support petitioner's testimony claiming he did not rob Rafael Haro in the prior robbery case. And now indicates to be error by the the prosecutor for failure to disclose favorable and material evidence going both to petitioner's innocence, and now to punishment. *Brady v Maryland* 373 US 83. Without the prior conviction, Petitioner's current sentence would only be 13 years, not the current 26 years he now is serving. Petitioner suffers prejudice.

And lastly, Petitioner can pass through the actual innocence gateway if he can demonstrate "actual innocence" of the prior robbery case. See *Gillie v. Yates*, 417 F.Supp.2d 1134 at 1140 – 1141. To be credible, such a claim requires Petitioner to support his allegations of constitutional error with new reliable evidence, whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence that was not presented at trial. *Schlup v. Delo*, 513 US 298; at 324. Petitioner presents in support of his claim of innocence:

1. Prosecutor letter that robbery victim in prior conviction misidentified petitioner;

2. Petitioner's testimony he did not rob Haro;

3. Sanchez tape recorded statement that Petitioner did not rob Haro;

4. Sanchez declaration that Petitioner did not rob Haro;

5. Three declarations and fingerprints Jesus H. Lopez that he alone robbed Haro.

See **Exhibits** B2 – B9.


D. NINE (9) FACT-SPECIFIC EXTERNAL FORCES, RATHER THAN PETITIONER'S LACK OF
   DILIGENCE, ACCOUNT FOR EQUITABLE AND STATUTORY TOLLING

*1.    Petitioner was Deprived of Legal Files.*

The following equitable and statutory tolling claims interweave and overlap each other. The claims are set out individually supported by evidence. In this first part, petitioner claims both trial and

1    appellate counsel deprived him of legal files during trial and during and after both direct appeal.

2    (D025258 & D029086).   This crippled petitioner's ability to assist himself in his defense at trial and on

3    appeal by informing counsel what the legal files revealed.    After trial and both appeals, counsel

4    abandoned petitioner's case.   In sum, petitioner ended up in prison without legal files to begin post-

5    conviction application and collateral attack seeking review with respect to the pertinent judgment and

6
     claims.
7

8         Petitioner was arrested on 4-23-95, and he was indigent, layman at law and illiterate.   Ronald K.

9    Vanesian, Public Defender, was appointed to represent petitioner.   On 5-30-95, Vanesian interviewed

10   petitioner concerning the instant offense and exposure to several life sentences under the 3 strike law.

11   On 6-9-95, Vanesian filed a *Cal. Pen. C. 995* motion to dismiss all counts and a *1385* motion to dismiss

12
     prior "strikes."   On 6-23-95, the prosecutor filed opposition to motions.   On 8-4-95 a hearing was held on
13
     the 2 motions, and the trial court denied both motions.   CT 4-26 (Defense Motions) 6-9-95.   CT 27-58
14
15   (Prosecutor Opposition) 6-23-95.   **Exh** . B 12  , _____ (Minute Orders).

16        At the 8-4-95 hearing on the 995 and 1385 motions, petitioner **asked** Vanesian to provide

17   petitioner with copies of records being used against him in the instant case SCD112436, and also of prior

18
     conviction cases CR105783 and CR140382.    Police reports, Informations, preliminary hearings,
19
     investigation reports and any other documents pertaining to the instant and prior cases.   Vanesian **did not**
20
21   provide any records petitioner requested.

22

23   **Conflict of Interest**
24
          Vanesian consulted Dr. Clark Smith, psychiatrist, to examine petitioner.   On 8-9-95, Dr. Smith
25
26   concluded:

27        1.  In regards to instant offense, petitioner suffered an alcoholic blackout at the time
              of instant offense; and
28

8

2.  In regards to "Previous Arrest" petitioner was heavily intoxicated and under peer pressure from a friend when the prior robberies were committed.

On 8-11-95, Vanesian declared a conflict of interest. He *did not* explain to the trial court what the conflict was. Nor did the court investigate on the record the basis for the declared conflict. Vanesian and the court simply repeated to each other a conflict existed. However, at the conflict hearing, Vanesian told petitioner that Dr. Smith's report disclosed material facts directly connected to the prior robbery case. Specifically, that petitioner was intoxicated and under peer pressure from a friend when the two prior robberies were committed. Vanesian said the prior robbery case indicated a "COURT TRAIL" was held, and William Youmans, the former public defender was *ineffective* for failure  to introduce intoxication evidence in the "COURT TRIAL" to negate the two prior robberies. Vanesian said he could not investigate Youmans because he was a co-worker in the same San Diego Public Defender Office and conflicting loyalties would occur to his office, fellow public defenders, and to petitioner. Therefore, new counsel would be appointed and investigate whether Youmans was incompetent and possible grounds to strike the two prior robbery strikes. This would leave petitioner with only "1-strike" form the prior assault case, and save petitioner from several life sentences under the 3-Strikes Law. Conflict Hearing RT 1-2, 8-11-95. **Exh.** _B_ . Dr. Smith's Rpt. CT 198-201, 8-9-95. **Exh.** _B 1_ . Petitioner's Declaration (Pet's. Decl.) at # _4_ , _5_ , _____ , 3-30-08. **Exh.** _C_ .

*New Counsel*

On 9-3-95 Daniel J. Mangarin, Alternate Defender, interviewed petitioner concerning the instant case and exposure to several life sentences under the 3-Strikes Law because of prior strikes. Petitioner told Mangarin that Vanesain claimed the former public defender, Youmans, was ineffective for failure to introduce intoxication evidence in the "COURT TRIAL" in the prior robbery case, and it could be grounds to strike the prior robbery strikes. Petitioner further told Mangarin that he did not rob Rafael Haro in the prior robbery case. Petitioner explained that Haro and Juan Sanchez were sitting in a car and Jesus Lopez walked up to the car and Lopez robbed Haro while Haro sat in the driver's seat. Sanchez

was the passenger and *saw* Lopez rob Haro. Petitioner told Mangarin he served prison time for Haro's robbery, and after petitioner was released from prison he learned through Sanchez that Haro had went to court during the time petitioner was being prosecuted for Haro's robbery and Haro told the court petitioner **did not** rob him.

Mangarin told petitioner he would not investigate the conflict of interest, nor petitioner's claim of innocence. At the attorney/client interview (9-3-95) petitioner **asked** Mangarin to provide petitioner with copies of records being used against him in the instant case and also of the prior conviction cases. Police reports, Informations, preliminary hearings, investigative reports and any other related documents pertaining to the instant case and prior cases. Mangarin **did not** provide any records petitioner requested. So when trial began in the instant case, petitioner did not have any records of instant case, or of the prior robbery and assault cases.

*Petitioner's Testimony Claiming Innocence of Haro's Robbery*

On 9-25-95, as scheduled, trail began. On 9-26-95, Champion testified petitioner kidnapped him. On 9-27-95, petitioner testified and on cross-examination, the prosecutor tried to impeach petitioner's testimony in the instant kidnap case by questioning him whether he previously had been convicted in 1989 of 2-robberies, case CR105783. Herein petitioner testified he did not rob Haro in the prior robbery case. The prosecutor tried to refute petitioner's claim of innocence, by **falsely claiming** petitioner signed a change of plea form in the prior robbery case. Of course no change of plea form exists.

**PROSECUTOR**: Your prior convictions were for 2 different robberies as well as car theft in 1989, wasn't it?

**PETITIONER**:    It was one case sir.

Q.    It was 2-victims, wasn't it?

A.    Yes.

Q.    it was 2-robberies, wasn't it?

A.   Yes.

Q.   And car theft?

A.   No.  I didn't do the first robbery.  (Sic, Haro is the first robbery)

Q.   And you served time on a robbery you didn't do?

A.   Yes.

Q.   Well, both of those robberies occurred within 15-minutes of each other didn't they?

A.   Yes.

Q.   And you're saying you did one but not the other?

A.   Yes.

Q.   Which robbery didn't you do that you pled guilty for.  Which one of the 2-robberires that occurred within 15-minutes of each other?

A.   The first one. (Sic, Haro is the first robbery).

Q.   My question to you is, do you or do you not admit that you were convicted of 2-robberies.

A.   I said yes already.

Q.   Of 2 robberies and car theft?

A.   They gave me "2-strikes" for that.

Q.   Do you or do you not admit you were convicted of 2-robberies and a car theft?

A.   I pled guilty to 2-robberies.

Q.   And a car theft.  Let's see if you recognize your signature on a change of plea form.  Do you see the name there where it says Leovardo Salceda?

A.   Yes.

Q.   Is that your signature?

A.   Yes.

Q.   And that's your signature on a change of plea form, court # CR105783, isn't it?

A.   Yes.

Q.   And isn't it a fact you see here, robbery, robbery, unlawful taking of a vehicle.  That's what you pled to?

A.   But I didn't take the car.

On 10-3-95, the jury convicted petitioner in instant case of kidnap.  The following day, 10-4-95, trial on the priors was held and the court found true the prior convictions.  On 12-29-95 petitioner was sentenced to 35-years-to-life under the 3-Strikes Law.  On 1-7-97, petitioner was transferred to prison

11

1   without any records he requested from Vanesian and Mangarin. See Pet's Decl. at # _3_ 3-30-08.

2   **Exh.** _C_ . Petitioner's Notes while in County Jail Requests & Complaints Trial Counsel denied

3   Petitioner Legal Files, 12-29-95. **Exh.** _D 1_ . Pet's Testimony Instant case Claiming Innocence of

4   Prior Robbery of Haro, RT 288-290, 9-27-95. **Exh.** _B 2_ .

5

6

7   _Appellate Counsel, the First Direct Appeal D025258_

8        On 3-27-96, Handy Horiye, appellate counsel, wrote petitioner and asked whether he had any

9   "issues" to raise in the opening brief. On 4-20-96 and 5-6-96, petitioner wrote Horiye and claimed 1) the

10  conflict of interest affected Mangarin's performance and resulted in ineffective assistance and prejudiced

11  petitioner, 2) that petitioner testified in the instant case and claimed he did not rob Haro in the prior

12  robbery case, and exculpatory evidence existed that Haro went to court back in 1989 and told the court

13  petitioner did not rob him, and 3) when petitioner testified and claimed innocence, the prosecutor "falsely

14
15  claimed" in open court that petitioner signed a "change of plea form" in the prior robbery case that had

16  on it "robbery, robbery, auto theft." Petitioner told Horiye he never signed a change of plea form and no

17  such form existed.

18        On 6-1-96, Horiye wrote petitioner and said he reviewed petitioner's "issues" and the prior

19
20  robbery case, but did not find Haro's exculpatory statements that petitioner did not rob him. Horiye

21  asked petitioner what "rights" he waived in the prior robbery when the preliminary hearing transcript was

22  submitted in the slow guilty plea. On 8-20-96, petitioner wrote Horiye and said Youmans, Public

23  Defender, "coerced" him to submit on the transcript, but petitioner was not advised of or waived any

24
25  rights prior to the slow plea. On 8-23-96, Horiye wrote petitioner and said Youmans' "coercing" him

26  was not important. On 10-28-96, Horiye wrote petitioner and said the appeal was over and he abandoned

27  the case. Horiye did not send to petitioner the reporter's and clerk's transcript after the 1st appeal.

28

12

The above letters between petitioner and Horiye shows petitioner claimed he did not rob Haro, and Haro made exculpatory statements favorable and material to petitioner's claim of innocence. And no change of plea form existed in the prior robbery case, nor adequate Boykin-Tahl waivers elicited form petitioner. See Horiye's Letters, 3-7-96, 6-1-96, and 10-28-96. **Exhs.** _E_ , _E1_ , _E3_ .
See Pet's Decl. at # _7_ , 3-30-08.

At this point, 10-25-96 the Court of Appeal affirmed the appeal, vacated the sentence, and remanded petitioner for re-sentence under *Romero* 13 Cal.4th 497. At  re-sentence,  petitioner  was allowed to talk before re-sentence, he told the trial court he did not rob Haro, that it was his friend.
**Petitioner**: "Yes, the crimes in 1989 happened (sic-2 robberies), but that was not me that started everything. That was a friend of mine. Because I kept my mouth shut, I was found guilty." RT 17, L. 23-27, 6-12-97. **Exh.** _B9_ .

On that day, 6-12-96, petitioner was re-sentenced to 25 years, 80%   The very prior robbery of Haro was used to double the 8-year upper term for kidnap, and also used as a 5-year serious felony enhancement.


*Appellate Counsel, the Second Direct Appeal D029086.*

On 8-26-97, Horiye wrote petitioner that he was appointed again to represent petitioner on the 2nd appeal.  On 3-25-98, the Court of Appeal affirmed the 26 year sentence.  On 3-26-98, Horiye wrote petitioner and said the 2nd appeal was over and he abandoned the case. Horiye did not send to petitioner the reporter and clerk's transcripts after the 2nd appeal.

In summary, during the pretrial, trial, trial on priors, and sentence, Mangarin deprived petitioner of legal files.  Petitioner could not determine from the files whether he could have assisted his trial attorney.  Then during both appeals, and post-appeal, Horiye deprived petitioner of legal files to assist in the appeal process.  In fact petitioner made attempts in 1998, 1999, and 2000 to gather records and finally

on 3-17-00, Horiye wrote petitioner and said he had mailed the reporter's and clerk's transcript of instant case back to Mangarin. On 5-15-00 and 5-31-00, , petitioner wrote to Mangarin requesting the reporter's and clerk's transcript on appeal.  Mangarin did not respond.  Petitioner complained to the court and Andrea Gerba, court clerk, contacted Mangarin on petitioner's behalf requesting Mangarin to give petitioner the record on appeal after both appeals.  Petitioner clearly did not have any records of the instant case or of prior cases.  Petitioner was deprived of legal files.  He was indigent, a layman and illiterate with a grade point level of 7.6, 9-24-98.  **Exh.** D . See Horiye, Pet's, and Andrea Gerba (Court Clerk) Lett's, 3-25-00, 3-30-00, 5-15-00, and 12-1-00. **Exhs.** E 9 , E 11 , E 12 , E 15. Pet's Decl. at # 14 , _____, 3-30-08.  **Exh.** C .

### 2. *Prison Vocation Trades and Job Assignments Conflicted with Law Library Use.*

On 3-25-98 the Court of Appeal filed its opinion D029086 (2nd appeal).  From 3-25-98, petitioner had 90 days to file petition for certiorari in U.S. Supreme Court, but he did not do so.  In practice, direct appeal became final on 6-25-98.  From there, under the AEDPA, petitioner had until 6-24-99 ... 1-year ... to file post-conviction application seeking relief of judgment or review of claims to stop the AEDPA "clock."  Bowen v Roe 188 F.3d 1157, 1159. (9th cir.).  Horiye abandoned petitioner's case on 3-25-98, and thereafter, petitioner  immediately exercised due diligence making attempts to research and investigate issues in the prison law library to prepare a petition to file seeking post-conviction relief.  However, apart from being deprived of legal files, another external force, rather than petitioner's lack of diligence, account for equitable and statutory tolling.

For the past 11 years, from 8-13-97 to present day 3-30-08, prison officials have consistently assigned petitioner to vocational trades and prison jobs.  This is mandatory and failure on petitioner's part will subject him to disciplinary action CDC-115 and losing all privileges and cell or cube confinement.  CCR, Title 15, Sec. 3312(a)(3) Disciplinary Methods (2007 Ed.).  Petitioner was forced to

report to his assignments or face disciplinary punishment. Petitioner did not have free will to investigate, research and formulate the issues and claims in his case in the library. From 8-13-97 to 3-7-03 petitoner was at Lancaster Prison "D" yard. The library hours were Wednesday through Sunday, 9 a.m. to 3 p.m. But prison policy mandated petitioner report to his assignments unless he could show <u>proof</u> of a court deadline. <u>It was not negotiable.</u> From 8-31-97 to 5-30-98 petitioner worked at the canteen, Monday to Friday, 8 a.m. to 3 p.m. Between these dates, on 3-25-98, the Court of Appeal denied the 2nd appeal D029086. From 5-30-98 to 7-10-98 petitioner worked in the kitchen, Wednesday to Sunday, 4 a.m. to 11:30 a.m. From 7-10-98 to 3-6-99 petitioner worked in Vocational Office Machine Repair, Wednesday to Saturday, 6:45 a.m. to 4 p.m. From 3-6-99 to 5-1-01, petitioner worked as Recreation Clerk, Sunday to Thursday, 8 a.m. to 4 p.m.

The above prison job assignments from 8-13-97 to 5-1-01 petitioner was prevented from investigating, researching and formulating the issues and claims in his case in the library. On 5-10-01 petitioner was moved from "D" yard to "B" yard. From 5-16-01 to 4-24-02 petitioner worked in Vocational Office Services, Sunday to Wednesday, 6:30 a.m. to 3:45 p.m. From 4-24-02 to 3-6-03 petitioner worked in the library, Sunday to Thursday, 7:30 to 3:30 p.m.

On 3-7-03 petitioner was transferred from Lancaster Prison to Chuckawalla Prison. On 3-25-03 to 4-12-03 petitioner worked in the kitchen, Tuesday to Saturday, 12 p.m. to 8 p.m. From 4-12-03 to 5-7-05 petitioner worked in the Program Administration Office, Wednesday to Sunday, 7 a.m. to 3 p.m. From 5-7-05 to 2-1-06 petitioner worked in Vocational Office Services. From 4-1-07 to date 3-3-08 petitioner has worked as Bridging Tutor, Monday to Friday, 6 a.m. to 1:45 p.m. The above shows petitioner has been consistently assigned to vocational trades and prison jobs for 11 years. These assignments have conflicted and interfered with petitioner's ability to investigate and develop his claims. See Vocational Trades and Prison Jobs, 8-13-97 to 3-30-08. **Exhs.** $D2$ .        See Pet's Decl. at # $9$ , _____, 3-30-08. **Exh.** $C$ .

3. *Lancaster Prison Maximum Security Continous Lockdowns.*

Deprived of legal files, continual work assignments, another external force, rather than petitioner's lack of diligence, accounts for equitable tolling. The continued lockdowns prevented petitioner from access to library and caused delay in post-conviction collateral attack to timely file a petition within the 1-year statute of limitations under the AEDPA. From 8-13-97 to 3-6-03, petitioner was at Lancaster Prison, Level 4 maximum security. Petitioner was on "D" yard from 8-13-97 to 5-10-01. On 5-11-01, petitioner was moved to "B" yard until 3-6-03. During these 6 years, on the yards petitioner was housed on, there were numerous yard stabbings and neck-slashings. Between these violent attacks, in 1999, there was a riot involving 123 inmates and one inmate was shot. In 2000 another riot involving 120 inmates, and yet another riot in December 2001 involving 300. Helicopters came to rescue inmates to local hospitals.

During the years between 8-13-97 to 3-6-03, between lockdowns for individual attacks and riots, at least 5 "State of Emergencies" was declared by Lancaster Prison Officials for investigations, search of weapons and other contraband. State of Emergencies 8-22-99, 6-3-01, 7-6-01, 12-26-01, and 8-28-02. There were discovery of prison made knives, drugs, cell phones, and other contraband. Petitioner was able to gather lockdown documentation dating back from 1-4-99 to 3-6-03. On 3-6-03 petitioner was transferred from Lancaster to Chuckawalla Prison. Petitioner submits his declaration in support of continuous lockdowns preventing him access to library. See Prison Memo's Lockdowns, 1-4-99 to 3-6-03. Exhs. __D3__ - _____. Pet's Decl. at # __10__, _____, 3-30-08. Exh. __C__.


4. *Gathering Records of Instant Case, and of Prior Conviction Cases.*

Deprived of legal files, job assignments, lockdowns, petitioner began the task of gathering records of the 3 cases, i.e. 1995 instant kidnapping case SCD112436, 1989 prior robbery case CR105783

(2 strikes), and 1993 prior assault case CR140382 (1 strike).  For each case, and the issues and claims involved, i.e., actual innocence, Boykin-Tahl error, prosecutor misconduct, ineffective assistance of counsel, and sentencing error it was necessary petitioner obtain the court file, reporter's and clerk's transcript, client files, and discovery from the district attorney.  Beginning on 4-1-98 to present day 3-30-08 petitioner wrote the Superior Court, defense attorneys, prosecutors, State Bar, Police Dept., Innocence Project, Dept. of Justice, and searched for witnesses.  Petitioner needed records to support his claims in the instant case and of prior conviction cases.

On 10-25-96, the 1st appeal, the Court of Appeal remanded petitioner's case back for re-sentence. Handy Horiye, appellate counsel, kept the record on appeal.  On 6-12-97 petitioner was re-sentenced to determinate 26 years.  On 3-25-98, the 2nd appeal, the Court of Appeal affirmed the 26 year sentence. Horiye kept the record on appeal and he abandoned petitioner's case.  Petitioner was deprived of legal files.

As an offer of proof, petitioner submits 57 letters, reduced to ½ size because of bulkiness.  Exhs. E - E56.  On 4-1-98 petitioner wrote to Mangarin, trial counsel,  and requested reporter's and clerk's transcript of instant case.  He did not respond.  On 10-5-98 petitioner wrote the Superior Court requesting records of the prior robbery case.  The court did not respond.  On 3-1-99 petitioner wrote Horiye requesting the record on appeal.  He did not respond.  On 12 -20-99 petitioner wrote Mangarin requesting legal files.  He did not respond.  On 3-14-00 petitioner wrote Horiye requesting the record on appeal.  On 3-17-00, Horiye wrote and told petitioner that he sent the record of appeal to Mangarin.  On 3-15-00, 5-15-00, and 5-31-00 petitioner wrote Mangarin requesting the legal files.  Mangarin did not respond.

On 5-25-00 petitioner wrote the trial court and complained that Mangarin would not give petitioner the record on appeal.  Petitioner asked the trial court for a copy of the record on appeal.  On 6-7-00, Andrea Gerba, Court Clerk, contacted Mangarin on petitioner's behalf requesting he send petitioner

the legal files. On 7-28-00, petitioner received the record on appeal for the 1st appeal D025258. On 3-14-00 petitioner wrote William Youmans, prior robbery attorney, requesting the work product "client file" CR105783. On 4-28-00, Alex M. Loebig, Public Defender, wrote petitioner and explained Youmans died in 1999. Loebig sent petitioner the preliminary hearing transcript and probation report and nothing else. It was a start. The reporter's and clerk's transcript for the instant case that petitioner received from Mangarin on 7-28-00, had records used in the **trial on priors**. They were:

1989 Prior Robbery Case CR105783:

1. Information charging 2 robberies;

2. Jury Waiver;

3. Minutes of Probation & Sentence;

4. Abstract of Judgment;

5. Penal Code 969(b) "Packet"
   Containing petitioner's fingerprints & photo

1993 Prior Assault W/D/W Case CR140382:

1. Complaint charging assault W/D/W;

2. Change of Plea Form "Guilty";

3. Probation Conditions

With respect to petitioner's claim of innocence of the prior robbery case, the above records, used in trial on priors, were insufficient because they did not contain police reports, statements by witnesses before and after preliminary hearing, exculpatory evidence, nor records of the "slow plea." See Pet's, Court Clerk, and Loebig Public Defender Letters, 10-5-98, 3-14-00, 6-7-00, and 7-28-00. **Exhs.** E 15 - E 18 . See CT 124 - 145 ; RT 466 - 476 . Documents used in trial on priors. Instant case SCD112436. **Exhs.** B 11 .

On 8-2-00 petitioner again wrote the Superior Court requesting to buy the prior robbery case file CR105783. On 11-1-00, I. Grier, Court Clerk, wrote petitioner and told petitioner the prior robbery case file costs $22.50. On 12-1-00, petitioner sent $22.50 to the court and bought the case file. This record contained the Information, preliminary hearing transcript, probation report, and Minutes of the slow plea. However, it did not contain the verbal transcript of the slow plea. On 12-10-00, petitioner wrote the

Superior Court to buy the transcript of the slow plea. On 1-22-01, R. Williamson, Court Clerk, wrote petitioner instructing him to contact the Court Reporter's Office. On 2-4-01, petitioner wrote to the Court Reporter's Office requesting to buy specifically the slow plea transcript dated 10-3-89. On 2-14-01, E. Neal, Court Reporter, wrote petitioner and said the 10-3-89 transcript of the slow plea existed from 10-3-89 to 10-3-99 (ten years in storage). However, the transcript had been destroyed.

On 6-13-01, petitioner wrote Thomas Carnessalle, attorney in the prior assault case CR140382, requesting the legal files. He did not respond. On 4-20-01, petitioner wrote to Cathy Willis Bell, Court Reporter, requesting to buy the transcript of the guilty plea in the prior assault case. On 6-1-01, Bell, Court Reporter, wrote petitioner and informed him the cost was $25 for the transcript. Petitioner sent Bell $25, and on 8-16-01, petitioner received the guilty plea transcript. Petitioner also bought the transcript of the sentencing in the prior assault case.

On 7-5-01, petitioner wrote San Diego Police Dept. requesting the 911 tapes in which Russell Champion, victim in instant kidnap case, called in when petitioner jumped into his car. On 7-17-01, the Police Dept. wrote petitioner and informed him that the 911 tapes had been destroyed after 1-year in storage. See Pet's, Court Clerk's & Reporter's, and Police Dept. Letters, 8-20-00 through 7-17-01. Exhs. E21 - E29 .

In summary of gathering records, more letters, Exhibits E30 - E56 , show petitioner continued to correspond with the Superior Court Clerk's, defense attorneys, district attorneys, state bar, and searched for witnesses, which demonstrates petitioner made bona fide efforts in good faith to obtain records to support his claims. Petitioner in this equitable and statutory pleadings and claims will refer to the letters of record, which are interwoven with petitioner's post-conviction applications for relief of judgment and of pertinent claims. However, at this point, specifically, 6-21-01, petitioner begins to file post-conviction formal pleadings in the state courts seeking relief of judgment and of pertinent claims. The result was that the California Supreme Court denied petitioner's 5 claims *on the merits* in the habeas

corpus petition on 9-25-07, S150480. **Exh.** _A16_ . Petitioner now turns to post-conviction formal pleadings seeking relief.

5.  _Motion for Discovery, and Motion for Settled Statement to Reconstruct Missing Records_

Up to 6-16-01, petitioner could not get further court records and exculpatory evidence he needed to demonstrate he was innocent of robbing Haro. So on 6-21-01 petitioner filed in Superior Court prior robbery case motion for discovery, transcripts, and court records to support state habeas petition. The discovery motion claimed 1) failure to admit relevant defense evidence, 2) trial court failed to advise petitioner of rights, 3) ineffective assistance of counsel in prior robbery, and 4) prosecutor misconduct. On 9-14-01 the motion was denied because petitioner did not "**specify**" with "**particularity**" what he hoped to find to substantiate his issues and petitioner was not entitled to such material merely to comb the record for error.

On 9-21-01 petitioner filed in Superior Court prior robbery case motion for settled statement to reconstruct the missing record. In this motion, petitioner set out specific and particular factual allegation claims that Rafael , Haro (in prior robbery) made exculpatory statements that petitioner did not rob him. And that petitioner was not advised of, nor waived his right to jury, cross examine witnesses, nor against self incrimination. (Boykin-Tahl rights) after _Boykin v Alabama_ 395 US 238, and _In re Tahl_ 1 Cal3d 122. Petitioner specifically explained to the Court and prosecutor that he was looking for tangible evidence to prove innocence and constitutional Boykin-Tahl violation of rights. On 11-30-01 the motion was denied.

5.1 _First Piece of Exculpatory Evidence, Juan Sanchez Declaration_

On 5-10-01 petitioner was moved from "D" yard to "B" yard at Lancaster Prison. Juan Carlos Sanchez was on "B" yard. Sanchez is eyewitness and was with Haro when Haro was robbed. Sanchez

1  recounted that petitioner did nor rob Haro, that Jesus Lopez robbed Haro. Petitioner seized opportunity

2  and asked Sanchez for a declaration.

3      On 2-20-02 petitioner filed in Superior Court prior robbery case motion for reconsider action for

4  settled statement to reconstruct missing record and correct deficiencies of 1st motion for settled statement.

5  Petitioner was specific and    told the court and DA that he was looking for Haro's exculpatory

6  statement and Boykin-Tahl error. See Sanchez Decl. 11-15-01. Exh. _B3_ . See Denial of Moitons

7  Discover & Settled Statement, CR105783, 9-14-01, 11-30-01, 3-27-02. Exh. _A2_, _A3_, _A4_.

8

9

10     5.2 *First Round of State habeas Corpus Petitions*

11     On 6-25-02 petitioner filed in the Superior Court a writ of habeas corpus. Claims 1) Petitioner's

12 plea in prior robbery case was invalid on Boykin-Tahl grounds; 2) William Youmans, trial attorney in

13 prior robbery case was ineffective for failure to investigate witness, properly advise petitioner of Boykin-

14 Tahl rights, and petitioner was actually innocent of Haro's robbery; 3) Thomas Carnesalle, trial attorney

15 in prior assault case, was ineffective for failure to investigate the defense evidence; 4) Trial court failed

16 to weigh mitigation against aggravation in selecting upper 8-year term; 5) invalid admission of prior

17 convictions because petitioner was not advised of Boykin-Tahl waivers on trial on prior conviction; and

18

19 6) Trial court erred by reading "O.J. Simpson not guilty" murder verdict to petitioner's jury causing

20 swayed and inflamed passions. On 7-19-02 the habeas petition was denied on merits. The petition was

21 not denied on procedural grounds. *See Denial of Habeas Corpus, 7-19-02. Exh. _A5_.*

22

23     *It Should be Noted:*  On 6-21-01 petitioner filed in Superior Court prior robbery case motion for

24 discovery. Petitioner did not serve prosecutor copy of motion for discovery. However, on 9-21-01,

25 petitioner filed in Superior Court a motion for settled statement to reconstruct the missing record.

26

27 Petitioner *specifically* and *particularly,* searched for Haro's exculpatory statement and the missing

28 transcripts of the slow guilty plea. Petitioner duly served a copy on prosecutor. The prosecutor knew petitioner

searched for Haro's exculpatory statement, yet did not disclose it. On 2-20-02 petitioner filed in Superior

Court prior robbery case motion for reconsider for settled statement again looking for Haro's exculpatory

statements. Petitioner served a copy on prosecutor. The prosecutor knew petitioner searched for Haro's

statement, yet would not disclose it.

When petitioner filed his first habeas petition (6-25-02, HC17070) alleging in Ground Two that Haro recanted and also supported by Sanchez's declaration 11-15-01. Petitioner served a copy on district attorney. The district attorney knew petitioner sought exculpatory evidence, but still would not disclose it.

On 9-1-02, petitioner wrote Public Defender requesting work product "client file" in prior

robbery case. On 9-19-02, Cliff Emison, Public Defender, wrote a memo to Candi Corless, Public

Defender, requesting her to pull the Case File CR105783 for petitioner. Emison concluded in the memo

that the Public Defender *did not* represent petitioner. On 10-15-02, petitioner filed in Superior Court

prior robbery case, a motion for order upon Public Defender to give petitioner the client file. On 11-12-02, motion denied because it was "improper forum" to seek assistance to obtain client file.

On 9-25-02, petitioner wrote Mangarin, trial counsel, requesting the work product client file in

the instant kidnapping case. He did not respond. On 11-1-02, petitioner wrote the State Bar complaining

Mangarin would not release the file. On 12-16-02, the Bar contacted Mangarin on petitioner's behalf and

instructed him to send petitioner the client file. On 12-30-02, Mangarin wrote the Bar and petitioner that

he released the client file to petitioner. See Pet's, Emison, State Bar, and Mangarin Letters, 9-1-02, 9-19-

02, 9-25-02, 12-16-02, and 12-30-02. **Exhs.** E31 , E32 , E34 , E35 , and E36 .

See Denial of Motion for Client File, CR105783. **Exh.** A6 .

On 11-25-02, petitioner filed in the Court of Appeal a like habeas petition.  *Note :*

petitioner claimed Boykin-Tahl error that was directly connected to Haro's exculpatory statement, and

actual innocence of Haro's robbery. The Court of Appeal took *Judicial Notice* of the prior robbery court

case file, specifically, searching for Haro's exculpatory statement. The Court of Appeal ruled in its

opinion that prior robbery case file was "silent" as to whether petitioner was advised of Boykin-Tahl

rights, and the Court stated it could not find Haro's exculpatory statement. The Court of Appeal stated in

their opinion:

"Salceda claims the 1989 conviction is invalid because he agreed to a slow plea but was never informed of the right to remain silent and to cross-examine witnesses. The ***record is silent*** whether Salceda was advised and the court reporter's notes have been destroyed.

"Salceda claims had he known he could cross-examine witnesses he would have preceded to trial. He claims prejudice because robbery victim Rafael Haro later recanted his preliminary hearing identification of Salceda in open court. ***There is nothing in the record in to show Haro recanted.***

"Salceda's claim he is factually innocent of the robbery of Haro is unsubstantiated."
The habeas petition was denied.

See Court of Appeal Opin. D041226, 2-6-03. **Exh.** A7   .


### 5.3 *Second Piece of Exculpatory Evidence, Rafael Haro Exculpatory Statement*

The Court of Appeal had strong interest in Haro's exculpatory statement, but the problem for

petitioner was where to find Haro's statement. On 3-13-03, (after opin. D041226, 2-6-03), petitioner

wrote to the district attorney requesting exculpatory evidence to prove his innocence claim of Haro. The

prosecutor responded in a letter dated 5-21-03 and stated:

"Re:  People of the State of California v. Salceda, CR105783 / DA B62621

Dear Mr. Salceda:

"We are in receipt of your letter dated March 18, 2003, requesting discovery in the above case. Mr. Haro provided brief information to this office on October 3, 1989, indicating that he had ***mis-identified you*** as the person who had robbed him. He stated on that same date that he had no intention of coming to court at your trial and that he resided in Tijuana, Mexico. The information from Mr. Haro was not reduced to a report, but only noted in your case file.

"The information provided by Mr. Haro was immediately provided to your attorney at that time, Mr. William Youmans, at the time of your trial. If you require further information please contact the Office of the Public Defender of San Diego County.

Sincerely, /s/, George W. Clarke, Deputy District Attorney

See Clarke, DDA, Letter, 5-21-03. **Exh.** B 4 .


Based on Clarke's letter, petitioner believed more exculpatory evidence existed in Youmans' client file. On 6-3-03, petitioner filed in the Court of Appeal a petition for writ of mandate to compel the Public Defender Office to give petitioner the client file. Petitioner served a copy on Public Defender, District Attorney, and Superior Court. On 6-9-03, and 6-11-03, Gary R. Nicholes, Public Defender, wrote a letter and executed a declaration to the Court of Appeal and petitioner that his office located the "missing" file and he mailed the **"entire client file"** to petitioner. Petitioner received the file on 6-30-03. Because the Public Defender gave petitioner the client file, the Court of Appeal denied the mandate petition as "moot." Petitioner received the client file. The prior robbery client file "work product" CR105783 does not contain information that on the day of trial, 10-3-89, the prosecutor told Youmans about Haro's exculpatory statement. In violation of Brady v Maryland 373 US 83. See Nicholes, Public Defender Letter and Declaration, 6-9-03 and 6-11-03. **Exhs.** E 42 - E 45 . See Court of Appeal Denial of Mandate Petition, D042258, 6-17-03. **Exh.** A 8 .

*5.4 Third Piece of Exculpatory Evidence, Juan Sanchez Tape-Recorded Statement*

Petitioner found in the client file CR105783 a tape-recorded statement by eyewitness Juan Carlos Sanchez. Sanchez stated he was there when Haro was robbed and that petitioner **did not** rob Haro. That some other person with brown hair robbed Haro. See Sanchez statement, 8-15-89. **Exh.** B 5 .

Four Factual Allegations are Established:

1. Petitioner was not advised of right to cross examine witnesses and to remain silent in the prior robbery case;

2. Haro testified at preliminary hearing that petitioner robbed him, then later told the district attorney he mis-identified petitioner;

3. The prosecutor in prior robbery case did not tell Youmans that Haro mis-identified petitioner. Haro's statement was material and favorable to petitioner's guilt. And also material and favorable to petitioner's sentence in the instant case (sentence phase). Brady error.; and

4. Sanchez tape-recorded statement dated 8-15-89 is consistent with his declaration dated 11-15-01 that petitioner did not rob Haro.

*Prosecutor Misconduct*

Michael Groch, prosecutor in the instant case reviewed the prior robbery case maintained by his office to charge petitioner as a "3-strike" case. The file contained "NOTATIONS" that Haro testified at preliminary hearing, but afterwards he told the prosecutor he mis-identified petitioner. Groch knew evidence existed that was material and favorable to petitioner's guilt in the prior robbery case. Petitioner testified and on cross examination by Grouch, petitioner claimed 100% he did not rob Haro. Under *Brady v Maryland* and Pen. C. 1054 (discovery) Groch had duty to inform Mangarin, defense attorney, in instant case, that exculpatory evidence existed. After all, the robbery case was being used to charge petitioner under "3-strike" Law. Under *Brady*, it goes not only to guilt, but also to … "3-strikes" punishment.

In addition, Groch knew a change of plea form did not exist in the prior robbery case. Yet, when petitioner testified he did not rob Haro, Groch rebutted petitioner's claim of innocence, by *falsely* claiming in front of jury that petitioner *in fact* signed a change of plea form case #CR105783 that had on

it "robbery, robbery, auto theft." The prior robbery court file proves no such plea form exists. The Court

of Appeal confirmed this when it took judicial notice of prior robbery file and said in its opinion the

record is 'silent" as to whether petitioner was advised of Boykin-Tahl rights. See Ct. of App. Opin.

D041226, 2-6-03. Exh. __A7__ .

Groch's mis-conduct of **false** plea form went under the radar. It did not alert Mangarin, nor did

he object. Trail court never reviewed the false plea form because Groch was careful not to admit it into

evidence. Groch simply bluffed everyone.

Back to the collateral attack, after petitioner received Clarke's, DDA, Letter dated 5-21-03 that

Haro mis-identified petitioner. On 6-27-03 petitioner filed in Superior Court prior robbery case motion

for relief to over-turn the prior robbery conviction in light of newly discovered Haro's exculpatory

evidence, Boykin-Tahl error, and innocence claim. Petitioner requested appointment of counsel and

evidentiary hearing. On 8-20-03. Exh. __A9__ .

On 9-1-03 petitioner wrote California Innocence Project. On 9-23-03, Justin Brooks, Innocence

Attorney, wrote petitioner to fill out packet of 69 questions. Brooks told petitioner to submit Police

report, physical evidence, and probation report. See Pet's Brooks, Lett's., 9-23-03, 1-12-04. Exh.

__A10__ .       See Pet's Decl. at # __15__ . In support. 3-30-03 Exh. __C__ .


5.5 *Fourth Piece of Exculpatory Evidence, Jesus H. Lopez Declares He is the Robber*

In February 2004 petitioner's mother, Carmen Lopez and aunt, Angie Camarena, located Jesus H.

Lopez at San Diego country jail. Carmen and Camarena told Lopez that petitioner was trying to prove he

did not rob Haro. On 5-20-04, Lopez executed a declaration stating he remembered the Haro robbery.

Lopez stated he alone robbed Haro. That petitioner did not rob Haro. Lopez thereafter ordered petitioner

at gun point to rob the gas station clerk. Lopez attested he alone was responsible for both robberies. The

robbery of Haro and gas station were separate and 5-minutes apart. See Lopez Decl., 5-20-04. **Exh.** __B6__ .

See Carmen Lopez and Camarena's Decl's., 11-23-05. **Exh.** B13 , B14 . See Pet's Decl. at # 8 , 16 in support, 3-30-08 **Exh.** C .

On 6-14-04, petitioner filed in California Supreme Court habeas petition claiming 1) invalid prior conviction on Boykin-Tahl ground enhances current sentence, 2) Petitioner is innocent of robbery of Haro and prosecutor mis-conduct failure to disclose Brady material an introduced false evidence (Haro's preliminary hearing testimony) to convict petitioner, 3) Trial court erred for denying CALJIC 9.58 and excluding Dr. Smith's expert opinion, 4) Trial court erred in selecting upper 8-year term without considering mitigation that outweighed aggravation, and 5) Under the new *Blakely v Washington* (2004) 123 S.Ct. 2531 sentencing factors were not admitted by petitioner nor found by jury under 6th Amendment.

Almost a year later on 6-8-05 the California Supreme Court denied the petition without prejudice on procedural grounds. Citing *In re Robbins* 18 Cal.4[th] 770 at 780, *In re Swain* 34 Cal.2d 300 at 304, *In re Dixon* 41 Cal.2d 756, *In re Lindley* 29 Cal.2d 709, and *In re Waltreus* 62 Cal,2d 281. See habeas Denial S125591, 6-8-05. Exh. A11 .

Petitioner learned he must correct the deficiencies, under _Swain_ and _Robbins._ Explain reasons for procedural default so that the claims will be heard on the merits.

_Swain_ at 304, petitioner must allege with particular facts upon which he would have final judgment over-turned and disclose reasons for delaying presentation of facts. _Robbins_ at 780, petitioner must specify when evidence offered in support of claims was obtained. Demonstrate absence of delay supported by exhibits. Petitioner can show he was conducting on going investigation into at least ...one potentially meritorious claim. Claims will be entertained on merits if :

1) error of constitutional magnitude led to trial fundamentally unfair, absent error, no reasonable judge or jury would have convicted petitioner, or

2) Petitioner is actually innocent of crime.

*5.6  Second Round of State Habeas Petition to Correct Deficiencies Under Robbins 18 Cal.4th*

*770, and Swain 34 Cal.2d 300.*

At this point, 6-28-05, petitioner had:

1.      Reporters and clerk's transcript of instant kidnap case;

2.      Mangarin's client file;

3.      Prior robbery court file;

4.      Youman's client file;

5.      Discovery provided by Clarke, DDA;

6.      Prior assault court file;

7.      Carnessale's client file.

Six weeks prior to trial in instant case, Vanesian declared conflict based on combination of factual disclosure by Dr. Smith's psychiatric report which led to Vanesian's allegations that Youman's was ineffective in the prior robbery case. See pp. 8-9, ante. See RT 1-2. Exh. ___. Dr. Smith's Rpt, CT 198-201. Exh. ___. Mangarin was appointed and he interviewed petitioner on 9-3-95. petitioner told Mangarin Dr. Smith's report disclosed petitioner were committed and Youmans was ineffective for failure to present this evidence in the Court trial.  Petitioner also told Mangarin he did not rob Haro. Mangarin said he would not investigate either claim.

But as petitioner now had ¾ of the records of instant case and also prior convictions, the documents such as prior robbery guilty plea clearly show on its face Boykin-Tahl error.  The prosecutor had exculpatory evidence in their files.  Sanchez tape-recorded statement existed in Youmans client file. Mangarin in 1995 had access to these files by "asking" for them.  It is apparent Mangarin was ineffective for failure to adequately investigate the prior robbery case even though sufficient "red flags" surfaced to trigger investigation that would have lead to further discovery as a competent attorney under professional norms would have unearthed.

1      On 9-7-05, petitioner filed in Superior Court a habeas petition claiming Mangarin was ineffective

2  for failure to reasonably investigate the (a) conflict of interest, (b) Boykin-Tahl error, (c) exculpatory

3  evidence, and (d) told petitioner to lie (perjury) at trial to state he had "complete' blackout; 2) Petitioner

4  claimed actual innocence of robbing Haro, (a) Prosecutor in instant case committed misconduct by

5  "falsely" claiming a change of plea existed in prior case; 3) Prosecutor in prior robbery case committed

6  Brady error by failing to disclose Haro's statement (a) introducing false evidence Haro's testimony when

7  Haro had stated afterwards that he mis-identified petitioner.  On 4-20-06, the petition was denied.  It is

8

9  worthy to note 5-pieces of exculpatory evidence to prove innocence, 1.) Petitioner's testimony he did not

10  rob Haro RT 288-290, Exh. _B2_, 2.) Haro's exculpatory statement disclosed by the prosecutor Exh.

11  _B3_, 3.) Sanche'z declaration Exh. _B4_, 4.) Sanchez tape-recorded statement Exh. _B5_; and 5.)

12  Lopez's Decl. Exhs. _B6_, _B7_, _B8_.

13

14      The Court of Appeal in its opinion only referred to Sanchez and Lopez' declarations.  But

15  completely ignored and did not mention the Prosecutor's Disclosure of Haro's exculpatory statement, nor

16  Sanchez tape-recorded statement.    See Superior Court Denial of Habeas HC17070 (2nd Petition), 11-2-

17  05. Exhibit _A12_.  See Court of Appeal Denial of Habeas D048000, 4-20-06. **Exh.** _A13_.

18

19      On 6-21-06, Petitioner wrote the Superior Court to get the court file of instant case SCD112436.

20  On 7-15-06, Petitioner received the file.  This was Petitioner's effort to investigate whether Mangarin

21  even  looked and reviewed any of Petitioner's prior convictions.  Mangarin did not.

22      In preparing the new habeas petitioner to the Califoria Supreme Court to fix the deficiencies,

23  Petitioner also realized he needed Lopez' fingerprints to further support innocence claim.  Back in 1989 during

24  investigation of Haro's robbery, Detective Sullivan lifted several prints from Haro's car.  But the prints

25  did not match Petitioner's.  Matching the prints lifted by Sullivan to Lopez would prove Lopez was in

26  Haro's car and further support Petitioner's innocence.  On 7-29-06, Petitioner wrote the prosecutor

27  requesting the prints lifted by Detective Sullivan, and since Lopez has a criminal past specifically in San

28

Diego his prints were on record. On 8-2-06 Craig E. Fisher, Prosecutor, denied the request. Fisher said a "valid Court Order" is needed. On 8-22-06 Petitioner wrote the Superior Court to request Lopez' prints. On 10-16-06, Superior Court denied request. On 10-27-06 Petitioner filed in Superior Court prior robbery case motion for discovery for Lopez prints. On 11-15-06 the motion was denied. _Pet's & Fisher, DDA Lett's. Exhs. E52-E56. Discovery Lett's & Motion Denials. Exhs. A14, A15._

On 7-16-06 and 11-28-06 Lopez provided new declarations, 1-28-06 "Supplemental Declaration" has Lopez own original prints, left and right hand. Lopez prints will match prints lifted by Detective Sullivan from Haro's car. See Lopez Supplemental Declarations 7-19-06, 11-28-06. (Exhibits _B7, B8_ )

On 2-27-07, petitioner filed in the California Supreme Court habeas petition TO CORRECT DEFICIENCIES under *Swain* 34 Cal.2d p.304 and *Robbins* 18 Cal.4th p.780:

**Claim 1)** Actual innocence of prior robbery of Haro, (b) prosecutor in prior robbery violated Brady doctrine in light of Haro's statement, (c) prior robbery preliminary transcript transformed into "false" evidence because of Haro's statement he mis-identified petitioner yet prosecutor used it to convict petitioner.

**Claim 2)** Trial counsel in instant case was ineffective for failure to investigate prior robbery case even through sufficient "red flags" surfaced to trigger investigation, (b) conflict of interest, (c) Boykin-Tahl error in prior robbery, (d) request discovery from prosecutor to discover Haro and Sanchez exculpatory statements.

**Claim 3)** Trial Court erred in selecting upper term without weighing mitigation and aggravation, (b) Cunningham v. California 549 US _____ mandates sentencing factors must be submitted to jury and found beyond reasonable doubt.

**Claim 4)**  Trial Court erred when it refused Caljic 9.58 instruction, (b) petitioner denied expert testimony, (c) insufficient evidence to sustain kidnap, (d) petitioner denied notice of meaningful opportunity to defend against amended information.

**Claim 5)**  Trial Court erred when it read O.J. Simpson murder trial "not guilty" verdict to petitioner's jury immediately before deliberations causing inflamed and swayed passions.

On 9-27-07, the California Supreme Court <u>DENIED THE PETITION ON MERITS</u>, without citation of procedural default.  See Supreme Court Denial of Habeas Petition, **S150480,** 9-27-07.  **Exh.** _A16_ .


6. *Petitioner's Chronic Crohn's Disease.*

On 8-14-02 Petitioner was at Lancaster Prison and taken out to High Desert Hospital to emergency and remained in ICU 7 days.  Petitioner was bleeding internally and diagnosed with Chronic Crohn's Disease.   Since then, six colonoscopy examinations have been performed on Petitioner, 8 hospital stays, numerous doctor's appointments.   Petitioner takes sulfasalazine, prednisone (steroid), metronidazloe (antibiotic), ensure drinks.   This disease causes extreme cramps, weakness, constant diarrhea, and internal bleeding at all times.  Petitioner's health problems date from 8-14-02, 12-1-02, 4-25-03, 8-5-03, 10-16-03, 2-14-04, 4-22-04, 6-23-04, 8-24-04, 12-20-04, 2-17-05, 3-2-05, 4-18-05, 6-2-05, 6-16-05, 8-18-05, 9-6-05, 12-12-05, 1-6-06, 3-5-06, 7-31-06, 9-18-06, 11-22-06, 2-1-07, 5-23-07, 9-30-07, 11-8-07, 2-10-08.   Although Petitioner had constant lay-ins, he diligently tries to investigate issues in his case, research, and prepare collateral attack to file his pleading in a timely manner.

Petitioner's Crohn's prevented him from presenting his claims earlier. See Medical Records 8-14-02 through 3-30-08. Exhs. _D4_ .

### 7. Inadequate Prison Law Library

Beginning at Lancaster Prison on 8-1-98 to 3-6-03, because of Library Staff shortage, library access was not possible. The library had books out-dated legal materials and AEDPA Materials were scarce which prevented meaningful access to courts. Lancaster Prison cited budget cuts. On 3-7-03, Petitioner was transferred to Chuckawalla Valley State Prison and its library was closed citing "critical shortage of library staff." Then the library would open on 12-19-03 a memo specified it will focus on serving inmates with legal court deadlines. Petitioner did not have a deadline. On 11-29-04 library staff implemented "temporary" library access and prioritized inmates with court deadlines access to library. On 12-21-04 to 6-1-05 library was open two days per week. From 12-1-05 to 5-8-06 library opened one day per week. From 10-12-05 to 11-30-05 petitioner received staff verification he used the library 7 times for a total of 15 hours. Thereafter, staff refused to verify in writing the little amount of time Petitioner was allowed to use the library.

Another impediment is the over-crowding in prison. Chuckawalla Valley State Prison dormitories were designed to hold approximately 190 inmates, but prison over-crowding; each dorm is jam-packed with 340 inmates. 70% over-crowded. This causes delay and access to library because so many inmates try to gain access to library. There are 1,000 inmates per yard, but only 10 seats available in library, 7 legal and 3 recreational. Petitioner must wait for an inmate to leave before gaining access. The paging system is also an impediment. There are legal materials that are not available, so when Petitioner does gain access to the library, he submits a request for legal materials, i.e., case law, state or federal, AEDPA law, and new published cases. Petitioner waits two weeks for materials. This is denial to library. See Group 602, Library Memo's, Paging System. 4-28-02 - 5-16-08. Exh. D5.

Finally, on 3-15-07 "B" Yard began transition of yards from General Population to Protective Custody Inmates. Thereafter, for two months, the program was modified, which is turn prevented library use. Thousands of inmates were moved from "A" Yard to "B" Yard, from "B" Yard to "C" Yard, and finally on 1-28-08, to "D" Yard. Petitioner is now on "D" Yard. Petitioner along with thousands of other

1   inmates were moved.  Petitioner moved 3 times.  *Also, at least three lockdowns because contaigious*

2   *medical virus caused prison quarintine . Transition of Inmates, Quarintine . Exhs. D6 .*

3

4   8.  *Cause and Prejudice under Coleman v Thompson 501 US 722*

5       Mangarin, trial counsel in instant case, failed to expend pretrial resources to unearth evidence that

6
    would have led to discovery of Boykin-Tahl error on face of prior robbery case file.  Mangarin was
7
    unprepared when Grouch, prosecutor, falsely claimed in open court that petitioner signed a guilty plea
8
9   form, which of course no such plea exists.  This in itself would have led to Boykin-Tahl error discovery.

    Mangarin failed to discover existing exculpatory evidence in prosecutor's file and in client file of prior
10
11  robbery case.  It took the Bar to intervene for Mangarin to give petitioner the client file.  Petitioner now

12  suffers prejudice because invalid prior robbery case enhances petitioner's current sentence by 13 years.

13  Coleman v Thompson 501 US 722, 750, 753-54.
14
        Horiye, appellate counsel, failed to raise "dead bang winner" of Boykin-Tahl error on direct
15
16  appeal to discover exculpatory evidence in prosecutor's file and in client file, even when petitioner told

17  Horiye exculpatory evidence existed.  *Banks v Reynolds* 54 F.3d 1508, 1515; *Smith v Robbins* 528 US

18  259.
19

20

21  9. *Fundamental Miscarriage of Justice*

22      Petitioner can pass through actual innocence gateway if he can demonstrate his actually innocent
23
    of a prior robbery conviction.  See *Gillie v Yates* 417 F.Supp.2d 1134, 1140-41.  To be credible, such a
24
25  claim requires petitioner to support his allegations of constitutional error with new reliable evidence,

26  whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

27  evidence that was not presented at trial.  *Schlup v Delo* 513 US 298, 324.  Petitioner presents:

28  1.  District attorney letter that Haro mis-identified petitioner;

2. Petitioner's testimony he did not rob Haro,

3. Sanchez tape-recorded statement that petitioner did not rob Haro;

4. Sanchez declaration that petitioner did not rob Haro; and

5. Lopez' declarations and prints that he alone robbed Haro and ordered petitioner at gun point to rob gas station.

See Exhs. B2 - B9.

### 10. Pending Petition for Review, S162914

Petitioner received the California Supreme Court denial order S150480, filed 9-25-07 (Exh. A16). Petitioner began preparing this instant federal habeas petition. In researching equitable tolling and habeas claims, petitioner learned of two separate constitutional claims. Specifically, 1) legally presumed prejudice because of conflict of interest under Culyer v Sullivan 446 US 335; Mickens v Taylor 535 US 162; and 2) ineffective assistance of appellate counsel under Smith v Robbins 528 US 259. Petitioner had ..not squarely..raised the two claims in the state supreme court. So on 12-24-07, petitioner filed in the Court of Appeal a state habeas petition squarely raising: 1) legally presumed prejudice because of conflict of interest; and 2) appellate counsel was ineffective for failure to investigate the prior robbery guilty plea on Boykin-Tahl grounds, claims Haro recanted, and claim of innocence of Haro robbery.

In order to save time, for AEDPA purposes, petitioner by-passed Superior Court, and raised the two claims in Court of Appeal (Art.I, Sec.15 original jurisdiction in habeas). On 4-9-08, the Court of Appeal denied the two claims on procedural grounds. On 4-17-08, within 10-day deadline, petitioner filed a petition for review in state supreme court raising the two claims mentioned above. As of this date "6-6-08," the petition for review is pending. See Court of Appeal Denial on procedural grounds, D052224, 4-9-08. Coversheet of pending petition for review, S162914, filed 8-23-08. Exhs. A17, A18.

E. POINTS AND AUTHORITIES, STANDARD OF REVIEW

Equitable tolling of the filing deadline for a habeas corpus under 28 USC 2254 is available "only if extraordinary circumstances beyond a prisoner's control make it impossible to file petition on time." In addition, "when external forces, rather than petitioner's lack of diligence, account for failure to file a timely claims, equitable tolling may be appropriate. *Lott v Muller* 304 F.3d 918 at 922; citing *Miles v Prunty* 187 F.3d 1104 at 1107.

As petitioner went up the latter, Superior Court, Court of Appeal, and Supreme Court, only the Supreme Court denied petitioner's 5 claims on procedural grounds.  See S125591, Denial, 6-8-05, Exh. A11  .  Petitioner went back to Superior Court, to the Court of Appeal, and then to the California Supreme Court.  The California Supreme Court denied the 5 claims on the merits.  See S150480, Denial, 9-25-07.  **Exh.** A16  .  The AEDPA provides petitioner is entitled to tolling for the pendncy of a "properly filed application for state post-conviction review with respect to the pertinent judgment and claim.  28 USC 2244(d)(2); Artub v Bennett 531 US 4 at 5.  *Carey v Saffold* 536 US 214 at 219-21.

A decision on the merits necessarily implies that an application was "properly filed" because it is axiomatic that a court will not rule on the merits of an . . . . improperly filed application.  *Gaston v Palmer* 417 F.3d 1030 (9th cir).

Petitioner in detail, claims 9 extraordinary circumstances beyond his control made it impossible to file a meaningful habeas petition within the 1-year statute of limitations under 28 USC 2244(d)(1).  Petitioner herein demonstrates a "casual relationship" between extraordinary circumstances for equable tolling on which the claims rest and lateness of filing a timely petition.  *Valverde v Stinson* 224 F.3d 129 at 134.  As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules.  *Spitsyn v Moore* 345 F.3d 796 at 801 (9th cir, 2003).

The tolling claims are supported by documented evidence and the claims interweave.  (1) Petitioner, a layman with GPL of 7.6, was deprived of his legal files in instant case and prior conviction cases.  It has been recognized it is unrealistic to expect a habeas petitioner to prepare and file a "meaningful petition on his own within the limitation period" without access to his legal files. _____v_____ 432 F.3 1021 at 1027, citing *Spitsyn v Moore* 345 F3 796 at 799. Petitioner exercised reasonable diligence in attempting to locate and obtain his legal files to investigation issues and present his claims.  Petitioner had to complain to the Bar Association, file motion for client file, and petition for mandate to get the files.  See **Exh.** _A6_ , _A8_ .  *Spitsyn v Moore* (9th cir) 345 F.3d 796 at 801.

(2)  In order to comply with prison policy, pursuant to CCR, Title 15, Sec. 3312(a)(3), Disciplinary Methods, petitioner was obligated to report prison job and vocational / educational assignements.  During petitioner's entire incarceration he has complied with his assignments.  Petitioner has been disciplinary free of any write-ups because he reports to work as directed.  However, this has conflicted and impeded petitioner's ability to research in the prison law library.  Because petitioner did not have verifiable court deadlines, he was ordered to report to work.  *It was not negotiable*.  Lack of legal materials and knowledge of limitations period (AEDPA) may constitute impediment and extraordinary circumstances.  *Allen v Lewis* 255 F.3d 798; *Whelen/Hunt v Early* 233 F.3d 1146.

(3) The continuance prison lockdowns show casual connection because petitioner is prevented without court deadline to use library on lockdowns, and without legal files, petitioner is effectively lost. Spitsyn v Moore 345 F.3d 796 at 799.

(4) Petitioner made numerous attempts to get his legal files by writing letters to all counsel of record.  Counsel ignored petitioner's request.  Petitioner complained to the State Bar, forced to file motion for court order.  The Public Defender claimed at one point they did not represent petitioner.  See Exh. _E32_.  The Bar had to contact both Mangarin and Public Defender to turn over client files.  See Exh. _E35_ , _E36_.

In these files existed Boykin-Tahl error on face of prior robbery case, exculpatory evidence in the prosecutor and client files.  As soon as petitioner discovered these documents, he immediately filed for post-conviction petition seeking relief.  Lack of legal materials may constitute impeachment or extraordinary circumstances. *Wheler/Hunt v. Early* 233 F.3d 1146.

(5) When petitioner ultimately filed his habeas petitioners in state court, the California Supreme Court denied on procedural grounds citing *Swain* 34 Cal.2d at 304 and *Robbins* 18 Cal.4th at 780. Petitioner corrected the deficiencies and returned to Supreme Court and the 5-claims were denied on merits.  Petitioner also raised fundamental miscarriage of justice claims; constitutional error that led to trial so fundamentally unfair that absent the error no reasonable judge or jury would have convicted petitioner and petitioner is actually innocent of crimes he was convicted of.  Petitioner claims his application in California Supreme Court and denied the 5-claims on merits was "properly filed' Federal Court construe "postcard" denials to be decisions on merits *Hunter v Aispuro* 982 F.2d 344 at 348. Holding denial without Opinion by California Supreme Court ... is decision on merits of petition, except where citation in the denial indicates otherwise and thus properly filed. *Artuz v Bennet* 531 US 4 at 8-9; *Gaston v Palmer* 417 F.3d 1030.

(6) Petitioner suffers from chronic Chrones disease and required 6 colonoscopies numerous doctor evaluations, medications, and sickness causing cramps and weakness.  Records show petitioner has 5-bowl movements per day; records show 10-bow movements per day, each with blood present, these disabilities incapable of preparing and filing state court applications.  This impediment of petitioner's physical disabilities worsened. 28 USC 2244(d)(1)(B).

(7) It is virtually impossible for pro se petitioner to litigate claims unless afforded access to adequate library.  Inadequate library is impediment to one's obligation under *Whelen/Hunt v Early* 233 F.3d 1146; 28 USC 2244.  The library books are outdated and pocket parts are missing.  Petitioner submits request for legal materials and has to wait 1 or 2 weeks.  With this type of impediment one's

37

1  ability to focus on key issues are distracted by the wait for legal materials may constitute impediments.

2  *Early* 233 F.3d 1146.

3                                    CONCLUSION

4         For the foregoing reasons set forth in this application

5  for equitable and statutory tolling, petitioner requests this

6  Honorable Federal Court grant the application to hear the merits

7  of the petition for writ of habeas corpus presented herein.

8

9                                 PRAYER FOR RELIEF

10        Wherefore, petitioner prays this Court:

11 1.  Grant application for equitable and statutory tolling;

12 2.  Issue a writ of habeas corpus;

13 3.  Order an evidentiary hearing;

14 4.  Order to show cause;

15 5.  Appoint counsel for petitioner; and

16 6.  Grant any other relief this Court deems just, proper, and in
       the interest of justice.

17

18

19                                 VERIFICATION

20        I, LEOVARDO SALCEDA, declare as follows:

21        I am the petitioner in the above action.  I have read the

22 foregoing application for equitable and statutory tolling, and

23 petition for writ of habeas corpus and the facts stated therein are

24 true to my own knowledge, except as to matters that are therein stated

25 on my own information and belief, and as to those matters I believe them

26 to be true.  I declare under the penalty of perjury that the foregoing

   is true and correct and that this declaration was executed at Chuck-

27 awalla Prison in Blythe, CA.  June 6, 2008.    Respectfully Submitted,

28

                                                 Leovardo Salceda
                                                 Leovardo Salceda
                                                 In pro se.

                                       38

PROOF OF SERVICE BY MAIL

[C.C.P. 1013, 2015; 28 U.S.C. 1746]

STATE OF CALIFORNIA   )
                      )
COUNTY OF RIVERSIDE   )

I, *Leovardo Salceda*, am a resident of Chuckawalla Valley State Prison, County of Riverside, California, and am at least 18 years of age. My mailing address is P.O. Box 2349, Blythe, California, 92226.

On *6-6-08,*_____ I served a true and correct copy of the following document(s);
*Petition for Writ of Habeas Corpus 28 USC 2254 By Person in State Custody; Application for Equitable & Statutory Tolling 28 USC 2244 To Hear Merits of Petition for Habeas Corpus; Exhibits A - H8; Motion/Declaration To Proceed In Forma Pauperis (incomplete); Request To Proceed Before Magistrate Judge, And Thereafter issue Report & Recommendation To District Judge.*
on each party listed below by placing it in an envelope, with adequate postage or provided, and by depositing said envelope (in a box for United States Mail) at CVSP, P.O. Box 2349, Blythe, California, 92226.

Each party has been duly served.

This copy is being mailed to; *W. Samuel Hamrick, Jr., Clerk of Court U.S. District Court, Southern District of California 880 Front Street, Room 4290 San Diego, CA 92101*

I have mailed additional copies to;

There is regular delivery service by the United States Mail between the above place of mailing and the parties listed.

I declare under penalty of perjury, that the forgoing is true and correct.

Date: *6-6-08*

Signed *Leovardo Salceda*      CDC.I.D.# *J-90933*